Per Curiam.
On the trial of this ejectment in Smith County, March term, 1817, the plaintiff produced a grant dated the 28th of August, 1815, to himself, also this entry: “A. Stubblefield, 175 acres in Smith County, on the dry fork of Goose Creek, beginning in Willis Curling’s east boundary line, running east and south for complement, including an improvement made by Benjamin Ellis, 12th June, 1812.” The defendant was found to be in possession. The plaintiff’s survey, as made, included the improvement made by Benjamin Ellis, the place where the defendant lived.
The defendant read a grant from this State to him, of a prior date to that of the plaintiff’s grant; but his entry was of a later date than the plaintiff’s entry, though prior to the plaintiff’s survey.
The defendant read Curling’s entry, and one in the name of Howell Tatum, for 176 acres. Willis Curling’s entry called to adjoin Howell Tatum’s on the east, to run up the creek for complement, &e., so as to include the place where John Lamb lived. Beginning at Willis Curling’s entry, on the east- boundary of Howell Tatum’s, and running so as to include the place where John Lamb lived; and then begin the plaintiff’s entry on what would be the east boundary of Willis Curling’s survey, it could not include the improvement made by Benjamin Ellis, the place where the defendant lived. There is an old line in the neighborhood some distance east of the east boundary of Howell Tatum’s entry, which, at and before the date of the plaintiff’s entry, was generally called and considered by the neighborhood to be Howell Tatum’s * line, but turned out to be Fenner’s and Montflorence’s line of an *483 old grant. . Begin the survey of Curling’s entry on that, line, and run the same agreeably to the entry; and then begin the survey of the plaintiff’s entry on what would be the east boundary of Curling’s, according to that survey, and run the plaintiff’s entry according to his calls, the improvement made by Benjamin Ellis, being the place where the defendant lived, would be included. But survey Curling’s entry from, that place as the beginning, it would not include the place where Lamb lived, and would be 145 poles from Tatum’s entry. It was not proved that either Curling’s or Tatum’s entry were surveyed before the date of the plaintiff’s entry. There was no east boundary line which had been surveyed and marked for Willis Curling’s entry, at the date of the plaintiff’s entry; nor. did it appear to have been surveyed until the plaintiff had his entry-surveyed. The plaintiff had Curling’s entry run out at the same time his was surveyed. The improvement made by Benjamin Ellis was known in the neighborhood at the date of the plaintiff’s entry. The court instructed the jury, that as the plaintiff’s entry called to begin on the east boundary of Willis Curling’s line, he must make that the place of his beginning wherever it should be established; that if by beginning there-and. running it agreeably to the calls, the improvement made by Ellis would not be included,, that call in the entry was to be disregarded; that the circum- - stance of an older line in the neighborhood having the reputation of Howell Tatum’s line, ought not to be taken into view, as afford--ing evidence of the specialty of the plaintiff’s entry, as the entry did not call to adjoin Tatum’s line, but Curling’s east boundary. These directions were excepted to.
The error assigned is in the refusal of the Circuit Court judge to grant a new trial; second^, for his misdirection to the jury.
* Curling’s entry is in these words : “ Willis Curling, in Smith County, on the north side of Cumberland River, on the dry fork of Goose Creek, beginning on the east boundary line of a tract of 176 acres, now claimed by Howell Tatum, and to run up the creek on both sides for complement, so as to include where John Lamb now lives. 1801, April 23d.” Howell Tatum’s entry is in these words: “ Howell Tatum of originally the heirs of Thomas, Epers, in Smith County, to lie on both sides of the dry fork of thee east fork of Goose Creek, beginning on the north side of said fork south of Elias Fort’s southwest corner, and running in an oblong *484 up both sides of said fork. This is in lieu of a former warrant to him by older surveys, and of a tract granted to said Tatum bv virtue of the same warrant, dated 1801, February the 17th; number of acres, 176.”
Upon this statement, after hearing the cause argued by counsel, we now proceed to give judgment. And two of us think that the chief question is, where shall Stubblefield begin ? At Curling’s east boundary, found by a survey, beginning on the reputed east boundary of Tatum’s entry, or on that which is to be found by a survey beginning on the east boundary of Tatum, to be ascertained by an actual survey of Tatum’s entry? The construction of an entry is to be guided by common sense and the common acceptation of words. Our sole object must be to attain its true meaning. To do this, we must, if possible, make every word take effect. If there be several calls, and one place will fit all of them, and another place will fit some only, then it is reasonable to fix upon the former. If a place will fit several, but not all of the calls, it is reasonable to adhere to those which are the most permanent. Where no natural object is called for, and the objects are all artificial, then fix upon that place which is pointed out by the most visible and immutable objects. Here every call concentrates in *' the plaintiff’s survey ; it extends from the first-mentioned east boundary of Curling and includes the improvement of Ellis. Begin at the last east boundary before mentioned, and the improvement of Ellis will not be included. If some call must be rejected, it ought not to be the improvement, for that is a principal call. It is in most cases specially aimed at; and, when settled on before the conflicting entry commences, in general is better known than lines. If, however, the improvement were out of the way, a line dependent on a reputed line ought rather to be adhered to than one dependent on a line to be ascertained by a survey to be made at a future time ; for it may never be made, or, when made, may be advanced or withdrawn, and placed on any point between the extremities of an oblong and square. An union of calls leads to the lands claimed by the plaintiff. So does the most visible and palpable line, if the lines alone were to govern the decision. Curling’s entry is to include Lamb’s improvement. Therefore, when surveyed, it should begin at the real or reputed line, whichever of them will best lead to that result. So, likewise, in the case of Stub- *485 blefield’s entry, it must begin on the line which will best answer the purpose of including Ellis’s improvement. And that is the line dependent on the reputed east line of Tatum’s tract. For these reasons, there ought to be a new trial.
E.OANE, Judge, dissentients. In this case, the grant of the defendant was prior in date to that of the plaintiff, founded on an entry made before the plaintiff’s survey. The plaintiff had an entry prior to that of the defendant, and the questions whether the plaintiff’s entry is special for the land in dispute. The evidence given on the trial is set out in a bill of exceptions, and the error assigned is that the judge misdirected the jury. The plaintiff’s entry * calls to adjoin the eastern boundary line of W. Curling, and that to adjoin Howell Tatum’s east line. To determine the specialty of the plaintiff’s entry, the other entries on which it depends must be examined. Howell Tatum’s entry is for 176 acres of land in Smith County, on both sides of the dry fork of the east fork of Goose Creek, beginning on the north side of said fork south of Elias Fort’s southwest corner, and running an oblong up both sides of said fork, dated February 17th, 1807. April 23d, 1801, William Curling entered 320 acres of land in Smith County, on the north side of Cumberland River, on the dry fork of Goose Creek, beginning on the east boundary line of a tract of 176 acres now claimed by Howell Tatum, and to run up the creek on both sides for complement, so as to include where John Lamb now lives. June 12th, 1812, Armstreet Stubblefield entered 174 acres of land in Smith County, on the dry fork of Goose Creek, beginning on Willis Curling’s east boundary line, running east and south for complement, including an improvement by Benjamin Ellis. On an inspection of these entries, it would appear as if no difficulty could arise. The beginning of Tatum’s entry is well known, and, as it calls to run an oblong up the creek, his east boundary line called for in Curling’s entry is mathematically certain.
About this entry, or the mode of running it, there is no dispute. Curling calls to begin on the east boundary line of Tatum’s 176 acre tract. It appears by the evidence stated in the bill of exceptions that there is an old line, 105 poles east of Tatum’s line, which, in the neighborhood, was generally called Tatum’s, but which in fact was a line of a survey made for Fenner and Montflorence.
If there were no other description or call in the entry, it might *486 be doubtful which of these lines Curling intended to join ; but all the calls of an entry ought to be taken together to determine the intent. It is to run * up the creek so as to include the place where John Lamb lives. John Lamb lived west of the reputed line ; so that, if Curling begins in that line and runs up the creek, he must abandon that call in his entry. But if he begins on the line as it really is, he will include Lamb, and the intent manifested in the face of the entry be effected. The plaintiff’s entry calls to begin on Curling’s east boundary line. No line was actually run at that time. It must be supposed that he was acquainted with that entry, and that the object called for particularly it was to include Lamb. This entry is to run east and south, and to include B. Ellis’s improvement. Ellis’s improvement was well known. It is' the place where the defendant resides, and for which he has a grant. No doubt Stubblefield intended by his entry to include it. If he can do so consistently with law, he ought to have it. But if he begins on Curling’s east boundary line, as Curling intended by his entry, he cannot survey in any mode authorized by law so as to reach it. When an enterer designates his beginning and the direction he intends to run, and calls for objects too remote to be reached by the survey, it is believed that he cannot abandon his beginning and include these remote objects. He cannot in this case be permitted to say, I was mistaken; I thought Tatum and Curling would have extended further up the creek ; therefore I will survey agreeably to what were my own conceptions at the time. The entries on which his depends would have been ascertained with precision. If he has been deceived on that subject, and surveyed improperly, the loss ought not to fall on the defendant. He had good reasons to believe himself safe, when he ascertained that all three of the entries of Curling, Tatum, and Stubblefield, running in an oblong up the creek, could not reach him. The Circuit Court judge was of this opinion. My present impressions are that he was substantially correct in his charge to the jury, and that the judgment ought to be * affirmed. But as a majority of the court think otherwise, the judgment must be reversed, and the cause remanded for a new trial.
See Wilson v. Kilcannon, 4 Hay. 182; King’s Digest, 7885.